UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATERIALIZE, INC.,                         Case No.: 5:21-cv-12325
          Plaintiff,
      v.                                   Judith E. Levy
                                           United States District Judge
MATERIALISE, N.V., and
MATERIALISE USA LLC,                       Curtis Ivy, Jr.
          Defendants.                      United States Magistrate Judge
_____/


**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY
IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 12)**


**I.     INTRODUCTION**

Plaintiff and the defendants have very similar names.  Unsurprisingly, this

similarity prompted discussions between the parties over the use of their names.

Plaintiff Materialize, Inc., filed this declaratory judgment action on October 1,

2021, seeking a declaration that it has not infringed or diluted Defendants'

trademark rights and that it has the right to use its MATERIALIZE mark in

connection with its business.  (ECF No. 1).  Defendants Materalise, N.V. ("MNV")

and Materialise USA LLC ("MUSA") responded with a motion to dismiss.  (ECF

No. 12).  They argue the Court lacks subject matter jurisdiction because there is no

case or controversy between the parties or, in the alternative, that the Court should

decline to exercise its jurisdiction.  (ECF No. 12).  The motion is fully briefed (ECF Nos. 18, 20) and is ready for report and recommendation.

For the reasons explained below, the undersigned **RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART, DENIED IN PART**.

## II.    COMPLAINT ALLEGATIONS

Plaintiff provides a streaming database service that processes real-time streaming data to inform their clients' business decisions, all under the trademark MATERIALIZE.  (ECF No. 1, PageID.2, at ¶ 3).  Plaintiff's consumers are technology specialists charged with designing and managing the company's software systems and who are computer programmers or engineers.  (*Id.* at PageID.7, at ¶ 23).  Plaintiff applied to register the word mark MATERIALIZE with the United States Patent and Trademark Office ("USPTO") on April 15, 2019.  The USPTO issued the registrations for the word mark on December 15, 2019.  (*Id.* at PageID.8, at ¶ 25).

Defendant MNV is a Belgium corporation with its North American headquarters in Michigan.  Defendant MUSA is, "upon information and belief," a licensee of MNV and so "may possess trademark rights sufficient to assert and claim rights in the MATERIALISE mark throughout the United States."  (*Id.* at PageID.4-5, at ¶¶ 12-16).  Defendants have been in the business of 3D printing for approximately 30 years.  Defendants do not offer a streaming data processing

platform like Plaintiff's platform. (*Id.* at PageID.8-9, at ¶ 27-29). Defendants own three trademark registrations for the MATERIALISE mark. (*Id.* at PageID.9, at ¶ 32).

The dispute began with a January 22, 2021 cease and desist letter sent from "Defendant" to Plaintiff. The letter was written by attorneys for MNV. (ECF No. 1-1, PageID.19). MNV asserted Plaintiff's use of "Materialize" "is likely to cause confusion of potential customers and the relevant public." (*Id.* at PageID.21). According to the letter, Plaintiff and MNV are in the same "market segment" because Plaintiff targets users of MNV's software products. (*Id.* at PageID.21-22). MNV wrote that Plaintiff's use of MATERIALIZE is a "knowing and willful infringement" of MNV's trademark, "as well as trademark dilution and unfair competition." (*Id.* at PageID.23). The company "demand[ed]" Plaintiff cease using the name. Further, if Plaintiff did not comply with the demands, MNV warned it "may seek cancellation of your MATERIALIZE trademark registration in the USPTO and pursue legal action in federal district court for willful trademark infringement, trademark dilution and unfair competition." (*Id.*).

On February 3, 2021, attorneys for both parties held a telephone conference discussing MNV's claims. (ECF No. 1, PageID.10, at ¶ 34). Plaintiff did not allege what occurred during this call. Plaintiff formally responded to the January letter on March 5, 2021, stating it did not agree its use of the mark infringed any of

MNV's rights.  (ECF No. 1-2, PageID.33).  What follows the introductory paragraph of the response letter is a legal analysis of trademark infringement and unfair competition under federal law.  (*Id.* at PageID.33-42).  Plaintiff concluded the relevant legal factors weighed in its favor that there is no likelihood of confusion and the infringement and unfair competition claims lacked merit. Plaintiff further asserted dilution was inapplicable to MNV because the company had not attained "household name" status.  (*Id.* at PageID.42).

MNV later obtained new counsel who responded to Plaintiff's letter on behalf of MNV in a letter dated April 13, 2021.  MNV held to its position that Plaintiff's use of MATERIALIZE was likely to cause confusion among consumers and adversely affect MNV's "strong goodwill."  (ECF No. 1-3, PageID.44).  "As such, [MNV would] not consider this matter closed until it is satisfied that Materialize will take all necessary steps to avoid confusion and to remedy any harm Materialize has caused to [MNV's] valuable trademark rights."  (*Id.*).  In concluding the response letter, MNV stated, "Before the parties head down a path that could result in a contested proceeding or further escalation, we suggest the relevant business and decision-making persons for each party" participate in a conference call to explore a possible business solution.  (*Id.* at PageID.46).

As no agreement had been made, MNV filed a Petition for Cancellation of the MATERIALIZE registration with the USPTO's Trademark Trial and Appeal

Board ("TTAB").  (ECF No. 12-1, PageID.112).  The parties again engaged in

settlement discussion on September 14, 2021, but could not come to an agreement.

(ECF No. 1, PageID.12, at ¶ 38).

Since the parties have not come to an agreement, Plaintiff asserts it "has

been put in the untenable position of not knowing if or when Defendant may sue or

take other action against" it.  (*Id.* at ¶ 39).  To resolve this dispute, Plaintiff brought

this action for a declaratory judgment that

> (i) its use of the MATERIALIZE Mark in connection
> with its streaming database business does not infringe
> any rights Defendant has in Defendant's Mark; (ii) there
> is no likelihood of confusion arising from Materialize's
> use or registration of the MATERIALIZE Mark in
> connection with its streaming database business; (iii)
> Defendant's MATERIALISE mark does not enjoy
> household fame in the United States; (iv) use of the
> MATERIALIZE Mark does not dilute Defendant's
> trademark; (v) Materialize has not engaged in any acts
> of unfair competition with Defendant; and (vi)
> Materialize has not violated any other purported rights of
> Defendant.

(*Id.* at PageID.12, at ¶ 40).  The TTAB proceeding was suspended pending

resolution of this case.  (ECF No. 18, PageID.168).

## III.   ANALYSIS AND RECOMMENDATIONS

A.   <u>Subject Matter Jurisdiction</u>

Rule 12(b)(1) provides for dismissing a claim for lack of subject matter

jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Subject matter jurisdiction is a threshold

issue which a court must determine before reaching other issues.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  If subject matter jurisdiction is lacking, this Court cannot adjudicate the action.  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).  "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction."  *Id.*

Defendants raised a facial attack.  When a court accepts the plaintiff's allegations as true, it can consider documents attached to and referenced in the complaint.  *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d. Cir. 2000) ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."); *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002) ("[D]ocuments that a

defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [plaintiffs'] complaint and are central to [their] claim."). Thus, in making this recommendation, the undersigned will consider the documents attached to the complaint and attached to the parties' briefs that are referenced in the complaint.[1]

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). In that regard, the Declaratory Judgment Act authorizes federal courts to render declaratory relief in cases of "actual controversy." 28 U.S.C. § 2201(a) ("[I]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."). The reference to cases of "actual controversy" means "actual controversy in a constitutional sense." *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). For a court to have jurisdiction, an actual controversy must exist both whenthe complaint is filed and

---

[1] The undersigned did not consider Plaintiff's counsel Leo Kittay's declaration at Exhibit 1 to Plaintiff's response brief. His declaration was not referenced in the complaint. Moreover, Plaintiff's citation to the declaration appears to have been in error. The declaration was cited to support a quotation from MNV's TTAB pleading at paragraph 20 of the declaration. Yet, there is no paragraph 20 in the declaration. (*See* ECF No. 18-1, PageID.192-95). Rather, the quotation comes from paragraph 20 of MNV's TTAB pleading, a document referenced in the complaint and which can be reviewed by the Court in this context. (*See* ECF No. 18-1, PageID.209).

throughout the pendency of the suit.  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013).

A declaratory judgment plaintiff can show an actual controversy by satisfying the "reasonable apprehension of litigation" test, which is to show "any indirect or implicit or covert charge [of infringement] or threat [of suit or] . . . any conduct or course of action from which any charge or threat could be inferred." *Robin Products Co. v. Tomecek*, 465 F.2d 1193, 1195 (6th Cir. 1972).  This test includes an objective and subjective prong: "whether the course of action would be regarded by a reasonable [person] as a [threat of suit] and was so regarded by the party seeking declaratory relief." *Id.* at 1196.  "[A] reasonable apprehension of litigation is sufficient but not necessary to show a case or controversy in a declaratory judgment action." *Blaszcyk v. Darby*, 425 F. Supp. 3d 841, 847 (E.D. Mich. 2019).  Alternatively, the plaintiff can demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018).  While there is no bright-line test for deciding whether a declaratory judgment action constitutes an actual controversy, what is required is:

> that the dispute be definite and concrete, touching the
> legal relations of parties having adverse legal interests;

> and that it be real and substantial and admit of specific
> relief through a decree of a conclusive character, as
> distinguished from an opinion advising what the law
> would be upon a hypothetical state of facts.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Proving a

reasonable apprehension of suit, however, remains "one of multiple ways that a

declaratory judgment plaintiff can satisfy the more general all-the-circumstances

test to establish that an action presents a justiciable Article III controversy."

*Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1336 (Fed.Cir.2008)

        1.      Defendant MUSA

The only allegation concerning MUSA in the complaint is that MUSA is a

licensee of MNV's MATERIALISE mark and, "as a result, may possess trademark

rights sufficient to assert and claim rights in the MATERIALISE mark throughout

the United States."  (ECF No. 1, PageID.5, at ¶ 16).  MUSA argues this single

allegation cannot establish the requisite case or controversy between MUSA and

Plaintiff.  MUSA asserts Plaintiff did not and cannot allege that MUSA (1) owns

trademark registrations for the MATERIALISE mark, (2) has ever communicated

with Plaintiff in any way, (3) has claimed it owns trademark rights, or (4) has

asserted a trademark claim against Plaintiff or any other party.  (ECF No. 12,

PageID.96).  Plaintiff's only response was to contend that MUSA could have

submitted evidence showing MUSA is not a licensee of MNV, and since it did not

9

submit such evidence, Plaintiff "may reasonably anticipate a legal claim from both

MNV and MUSA."  (ECF No. 18, PageID.182).

Even accepting as true that MUSA is a licensee of the MATERIALISE

mark, the claims against MUSA should be dismissed for lack of actual

controversy.  The cease and desist letter and reply letter to Plaintiff were written by

"attorneys for Materialise N.V. of Leuven, Belguim" from the law office that

"represents Materialise N.V."  (ECF No. 1-1, PageID.19; ECF No. 1-3,

PageID.44).  There is no mention of MUSA in either letter, nor in Plaintiff's

response to the cease and desist letter.  MUSA may theoretically be able to initiate

litigation against Plaintiff, but there are no facts suggesting there is any actual

controversy between MUSA and Plaintiff sufficient to establish subject matter

jurisdiction over the claims.  *See Virgin Health Corp. v. Virgin Healthmiles, Inc.*,

2009 WL 10667432, at *2-3 (S.D. Fla. June 15, 2009) (dismissing licensee

defendant because licensee was not party to any demand letters and otherwise did

not communicate with the plaintiff).

2.    Defendant MNV

MNV argues there is no case or controversy between Plaintiff and itself.  It

points out that the January 2021 cease and desist letter "did not definitively state

that Materialise Belgium would file a lawsuit if Plaintiff did not comply."  (ECF

No. 12, PageID.98).  Further, after that letter, MNV obtained new counsel who

"deescalated any threat of an immediate litigation and instead sought to open settlement discussions between the parties." (*Id.*).  Indeed, the April 2021 letter from MNV did not mention litigation, but mentioned only the possibility of a cancellation proceeding before the TTAB.  Finally, MNV notes it has not filed a lawsuit against Plaintiff in the eleven months since the cease and desist letter.  (*Id.* at PageID.99-100).

Plaintiff insists MNV's letters and initiation of the TTAB proceeding and Plaintiff's refusal of MNV's demands establish a controversy over whether its use of its mark violates MNV's rights, and hence, Plaintiff has a reasonable apprehension of suit.  (ECF No. 18, PageID.174-75).

The facts as alleged and contained in the appropriate exhibits demonstrate that there is sufficient case or controversy between Plaintiff and MNV.

The communications before this lawsuit and the TTAB proceeding establish a substantial controversy that is "definite and concrete" enough to be addressed in this Court.  MNV laid out the elements of a potential infringement action and threatened a lawsuit in the January 2021 letter to Plaintiff.  MNV told Plaintiff its use of the MATERIALIZE mark was "likely to cause confusion of potential customers" and that use of the mark was "knowing and willful infringement" of MNV's mark and constituted "trademark dilution and unfair competition."  (ECF No. 1-1, PageID.21-23).  MNV "demand[ed]" that Plaintiff cease using the mark.

If Plaintiff did not comply, MNV warned it would seek cancellation of the

MATERIALIZE trademark registration (which it initiated) and "pursue legal

action in federal district court." (*Id.* at PageID.23). It does not matter that MNV

did not "definitively state" it would sue. *See Hewlett–Packard Co. v. Acceleron*

*LLC,* 587 F.3d 1358, 1363 (Fed. Cir. 2009) ("The purpose of a declaratory

judgment action cannot be defeated simply by the stratagem of a correspondence

that avoids the magic words such as 'litigation' or 'infringement.' . . . It is

implausible (especially after *MedImmune* and several post *MedImmune* decisions

from this court) to expect that a competent lawyer drafting such correspondence

for a patent owner would identify specific claims, present claim charts, and

explicitly allege infringement.").

Plaintiff's comparison of this case to *Alticor, Inc. v. Nutrisystem, Inc.*, 2012

WL 4794596 (W.D. Mich. Oct. 9, 2012) is apt. In that case, the plaintiff filed suit

seeking a declaration that its use and registration of the NUTRILITE mark did not

constitute trademark infringement, dilution, or unfair competition related to

defendants' NUTRISYSTEM mark. *Id.* at *1. The defendants argued there was

no case or controversy, and thus no jurisdiction. The court disagreed. Defendants'

attorneys sent the plaintiff a letter claiming plaintiff's use of the NUTRILITE mark

infringed their rights and violated trademark and unfair competition laws. The

letter demanded that plaintiff withdraw its applications for the mark and refrain

from using the mark, otherwise the defendants would assume the plaintiff did not wish to settle the matter "amicably." *Id.* at *2. The court found the contents of this letter sufficient to establish the requisite case or controversy between the parties—the plaintiff "could reasonably interpret" the letter "as a threat to bring a trademark infringement action." *Id.* at *2-3 ("It is generally undisputed that a charge of infringement, and even conduct or action short of an actual charge of infringement, is sufficient to establish the existence of a case or a controversy.") (citing *Goodrich–Gulf Chems., Inc. v. Phillips Petroleum Co.,* 376 F.2d 1015, 1018 (6th Cir. 1967)).

While MNV's second letter in April 2021 did not use the same language of potential litigation as in the cease and desist letter, MNV's characterization that it de-escalated any threat of litigation is not accurate. MNV continued its claim that Plaintiff's use of the MATERIALIZE mark was likely to cause confusion and demanded that Plaintiff take steps to avoid the confusion and remedy harm to MNV's trademark rights. (ECF No. 1-2, PageID.44). MNV suggested that, before a cancellation proceeding or "escalation" of the matter, the parties engage in settlement discussions. Of course, the parties did not come to an agreement. Thus, taking MNV's letter to its logical conclusion, there would be a cancellation proceeding and "escalation." Because there was no agreement, MNV filed a

cancellation proceeding before the TTAB.[2]  It is true that the existence of a TTAB proceeding alone is insufficient to create an actual controversy, but the Court considers all the circumstances in determining whether there is a case or controversy.  *See Hogs and Heroes Foundation Inc v. Heroes, Inc.*, 202 F. Supp. 3d 490, 495 (D. Md. 2016).  MNV did not retract or abandon the claims made in the cease and desist letter and moved forward on one of the threats—to initiate a cancellation proceeding.

Under either the "apprehension of litigation" or "under all the circumstances" tests, the undersigned suggests there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy to warrant the issuance of a declaratory judgment.

In a footnote, MNV argues that even if the Court finds an actual case or controversy, the finding should not extend to Plaintiff's claims seeking a declaration of non-dilution.  (ECF No. 12, PageID.101, n. 3).  MNV contends the only mention—a "passing reference"—to dilution occurred in the cease and desist letter.  MNV did not mention dilution after that and did not allege dilution as a ground for cancellation of the MATERIALIZE mark in the TTAB.  (*Id.*).  Thus, it

---

[2] Plaintiff contends the fact that MNV refused to sign a covenant not to sue bolsters the threat of a lawsuit.  The undersigned does not consider this fact here because the parties did not discuss a covenant not to sue until after Plaintiff filed this case.  For a controversy to exist, it must exist at the time the complaint is filed.  Moreover, since the covenant not to sue was not mentioned in the complaint, it cannot be considered on Defendants' facial attack.

asserts there is no case or controversy related to dilution. Plaintiff did not address this footnote and the issue was not raised again in the reply brief.

That MNV continued asserting its trademark infringement claim in its second letter and initiated the cancellation proceeding were important facts in the conclusion that there is a case or controversy. But since dilution was not mentioned in the second letter and is not part of the TTAB claim, it indeed appears MNV abandoned the claim such that the circumstances do not suggest it views potential dilution to be an issue between the parties. Or, at least, there is no reasonable apprehension of litigation on a dilution claim. For these reasons, the undersigned suggests Plaintiff's declaratory action as to dilution be dismissed without prejudice for lack of subject matter jurisdiction.

B. <u>Discretionary Jurisdiction</u>

As an alternative, the Defendants argue this Court should decline its discretion to exercise jurisdiction over this case. In light of the recommendation to dismiss defendant MUSA for lack of case or controversy, the undersigned will address the Court's discretion with respect to defendant MNV only. "The Declaratory Judgment Act, 28 U.S.C. § 2201, confers discretionary jurisdiction on district courts to determine the propriety of a request for declaratory relief independent of threshold subject-matter jurisdiction requirements." *Blaszczyk*, 425

F. Supp. 3d at 856 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).

The Court's discretion on this matter is guided by a five-factor test:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

The weight to be given to each factor is left in the Court's discretion. *Banks Engineering, Inc. v. Nationwide Mut. Ins. Co.*, 2022 WL 203332, at *3 (6th Cir. Jan. 24, 2022) (citing *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019)).  Essentially, "the *Grand Trunk* factors . . . direct the district court to consider three things: efficiency, fairness, and federalism." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citing *Sherwin–Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390-91 (5th Cir. 2003)).

MNV argues the third and fourth factors weigh against the Court's exercise of its discretion, apparently conceding that the remaining factors support exercising

discretion.  (ECF No. 12, PageID.103).  As MNV does not argue the other factors weigh against exercising jurisdiction, the undersigned will only address factors three and four.

"The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008) (quoting *AmSouth Bank v. Dale,* 386 F.3d 763, 788 (6th Cir. 2004)).  The Sixth Circuit has expressed "reluctan[ce] to impute an improper motive to a plaintiff where there is no evidence of such in the record."  *Id.*

MNV cites multiple reasons why it contends Plaintiff is engaging in "procedural fencing" by filing this declaratory judgment action.

First, MNV insists "Plaintiff almost certainly" filed this action to gain a tactical advantage from the different way "likely confusion" is analyzed in TTAB proceedings and federal litigation.  The TTAB examines the uses of the mark as described in the trademark application or registration, while the federal court analyzes the use of the mark in commerce and compares that use to the plaintiff's mark.  (ECF No. 12, PageID.103-04, n. 4).  MNV argues Plaintiff's counsel is aware of the different analyses, and that is why the complaint here focuses on use

of the mark in commerce—immaterial issues in the TTAB proceeding.  MNV

maintains that this constitutes procedural fencing.  (*Id.* at PageID.104).

In the view of the undersigned, the fact that there are different analyses in

the TTAB proceeding and in this Court is not evidence that Plaintiff engaged in

procedural fencing by filing this action.  It is not clear from MNV's briefing what

tactical advantage Plaintiff could gain by achieving dispute resolution in this Court

on the use of the mark in commerce, considering the TTAB proceeding will

address the registration of the mark.

Second, MNV contends Plaintiff started this case because federal litigation

is more expensive than TTAB proceedings, and it is trying to "force Defendants to

spend significant money and resources" and gain an advantage during settlement

discussions.  (*Id.* at PageID.105).  Relatedly, it argues the sequence and tenor of

settlement negotiations demonstrates Plaintiff's "gamesmanship."  MNV initiated

the TTAB proceeding on July 6, 2021.  The parties engaged in the required TTAB

discovery conference on September 14, 2021.  Plaintiff did not mention its intent to

file this case at the discovery conference, yet filed the complaint two weeks later.

According to MNV, the failure to mention the intent to file this case shows

Plaintiff's "disingenuous motives for filing the instant litigation."  (*Id.* at

PageID.106).  And one month after Plaintiff filed this case, Plaintiff's counsel

suggested to MNV's counsel that the parties have a "business to business call,"

"further showing Plaintiff's attempts at gamesmanship by filing this action merely for perceived leverage." (*Id.* at PageID.107).

Plaintiff insists there was no gamesmanship—it "filed suit once settlement negotiations had reached an impasse, did not mislead Defendants about the prospect of settlement, did not fail to inform Defendants promptly once this suit had been filed, and sued in federal district court, not to gain an unwarranted tactical advantage, but rather to resolve, between all interested parties, the dispute over Plaintiff's use of MATERIALIZE in the only forum empowered to adjudicate the issue." (ECF No. 18, PageID.185).

The first point regarding the expense of federal litigation does not alone suggest Plaintiff is engaging in procedural fencing or gamesmanship. MNV did not suggest that the costs incurred to date are such that it is being coerced to settle this action lest it incur further great expense. Moreover, at least one court has observed that "the mere commencement of federal litigation does not constitute forum-shopping or procedural fencing, however expensive litigation might be." *See Neilmed Prods., Inc. v. Med-Systems, Inc.*, 472 F. Supp. 2d 1178, 1182 (N.D. Cal. 2007). The second point on the sequence and tenor of settlement negotiations is not evidence of a bad motive. The parties engaged in settlement negotiations before filing both the TTAB proceeding and this case, but to no avail. Plaintiff believes the parties can co-exist using their own marks, while MNV believes

Plaintiff's use of its mark is likely to create confusion and harm its reputation unless Plaintiff stops using its mark.

"Procedural fencing" can be found where, for example, the declaratory judgment plaintiff misleads the other party into believing earnest settlement negotiations are underway, and while "waiting" for the other party's response, files the declaratory judgment action. *See, e.g., AmSouth Bank v. Dale*, 386 F.3d 763, 789-90 (6th Cir. 2004); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 2001 WL 897452, *4 (6th Cir. July 31, 2001) (where declaratory plaintiffs filed suit after requesting extension to respond to settlement demand, one day before extension's expiration, a "finding of bad faith is overwhelmingly supported in the record"); *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 70 (D.R.I. 1999) (where declaratory plaintiff asked for letter outlining legal reasoning and promised to respond, then filed action prior to responding to letter, party "certainly shopped for a forum," and court therefore declined jurisdiction over first-filed action); *NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 646 (D. Or. 1994) (declining declaration judgment jurisdiction where the plaintiff used the guise of settlement negotiations to induce the defendant to refrain from filing a lawsuit in state court).

Here, there is no evidence to suggest Plaintiff misled MNV into believing a settlement was near or that it wanted to continue to attempt reaching a settlement only to then blindside MNV by filing this litigation. That Plaintiff did not tell

MNV about its plan to initiate this case at the TTAB discovery conference two weeks before filing suit, while perhaps not conducive to further settlement negotiations, does not have the necessary indicia of bad motive or procedural fencing. As Plaintiff insists, the parties' settlement talks were at an impasse, and as Plaintiff alleges in the complaint, it felt it was in a position of no longer using its mark or face litigation. In sum, the undersigned finds no facts on which to conclude Plaintiff had an improper motive or engaged in procedural fencing.

As for the fourth factor, this factor "takes into consideration 'which court, federal or state, is in a better position to resolve the issues in the declaratory action.'" *Byler v. Air Methods Corp.*, 823 F. App'x 356, 366 (6th Cir. 2020) (quoting *Flowers*, 513 F.3d at 560).

MNV argues this factor weighs against keeping this case because the TTAB proceeding is still pending and "Courts routinely defer to proceedings before an administrative agency before continuing with a litigation." (ECF No. 12, PageID.107). The two cases MNV cited were not decided in a declaratory judgment action; the Court was not addressing the fourth discretionary jurisdiction factor.

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. The undersigned finds no

basis to conclude that accepting jurisdiction here would increase friction with state courts—there is no state court action pending.  The TTAB proceeding is before the United States Patent and Trademark Office.  *See Crowned Heads, LLC v. Nat'l Grange of Order of Patrons of Husbandry*, 2013 WL 1347874, at *8 (M.D. Tenn. Apr. 3, 2013) (concluding  "as no parallel state action is pending, there is minimal risk of friction between federal and state courts" where the plaintiff filed declaratory judgment action and defendant initiated TTAB proceeding).

MNV did not cite authority stating that, where a TTAB proceeding exists, the federal district court should decline jurisdiction until the TTAB proceeding is concluded.  For that matter, the TTAB proceeding has been stayed pending resolution of *this* case.

The *Grand Trunk* factors weigh in favor of accepting jurisdiction over the remaining issues.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (ECF No. 12) be **GRANTED IN PART, DENIED IN PART**, and that defendant MUSA be dismissed and any claim related to dilution against MNV be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 11, 2022                                   s/Curtis Ivy, Jr.
                                                        Curtis Ivy, Jr.
                                                        United States Magistrate Judge